UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| BRENDA SHREE SYMONS,<br><br>    Petitioner,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Respondent. | Case No.: 2:11-cv-00409-EJL-REB<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court is Brenda Shree Symons' ("Petitioner") Petition for Review (Docket No. 1), seeking review of the Social Security Administration's decision to deny her claim for disability insurance benefits and supplemental security benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the court enters the following Report and Recommendation:

## I. ADMINISTRATIVE PROCEEDINGS[1]

Petitioner protectively applied for a period of disability, disability insurance benefits, and SSI disability benefits on January 10, 2005, alleging disability beginning January 1, 2002. Petitioner's claim was initially denied on July 25, 2005 and, again, on reconsideration on November 10, 2005.

---

[1] The parties do not dispute the procedural backdrop leading up to this action. *Compare* Pet.'s Brief, pp. 1-3 (Docket No. 20), *with* Def.'s Brief, pp. 3-6 (Docket No. 26).

**REPORT AND RECOMMENDATION - 1**

On or around January 12, 2006, Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On June 21, 2007, ALJ R.J. Payne dismissed Petitioner's request for hearing as untimely. On July 23, 2007 Petitioner filed a Request for Review of Hearing Decision/Order and, on August 29, 2007, Administrative Appeals Judges, Mark K. Haydu and Maria Kusznir, granted Petitioner's request for review, vacated ALJ Payne's order of dismissal, and remanded the case for further proceedings.

On January 8, 2008, ALJ Payne held a hearing in Spokane, Washington, at which time Petitioner, represented by attorney Mark B. Jones, appeared and testified. A medical expert, Steven Gerber, M.D., also appeared and testified during the same January 8, 2008 hearing.

On April 29, 2008, ALJ Payne issued a decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act. On May 8, 2008, Petitioner again filed a Request for Review of Hearing Decision/Order and, on September 30, 2008, Administrative Appeals Judges, Haydu and Kusznir, granted Petitioner's request for review, vacated ALJ Payne's decision, and remanded the case for further proceedings.

On April 8, 2009, ALJ Gene Duncan held a hearing in Spokane, Washington, at which time Petitioner, represented by attorney Mark B. Jones, appeared and testified. A medical expert, Reuben Beezy, M.D., and a vocational expert, K. Diane Kramer, also appeared and testified during the same April 8, 2009 hearing.

On October 1, 2009, ALJ Duncan issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. On October 19, 2009, Petitioner again filed a Request for Review of Hearing Decision/Order and, on July 5, 2011, the Appeals Council denied Petitioner's request for review, making ALJ Duncan's decision the final decision of the Commissioner of Social Security.

**REPORT AND RECOMMENDATION - 2**

Having exhausted her administrative remedies, Petitioner timely files the instant action, arguing that "[t]he conclusions and findings of fact of the defendant are not supported by substantial evidence and are contrary to law and regulation." *See* Pet.'s Compl., p. 2 (Docket No. 1). Specifically, Petitioner asserts that "[t]he jobs identified by the ALJ in the Decision require physical demands in excess of the Petitioner's limitations as identified by the ALJ in the same Decision." *See* Pet.'s Brief, p. 3 (Docket No. 16). Petitioner requests that this Court "[r]emand the case for a further hearing." *See id*. at p. 6; *see also* Pet.'s Compl., p. 2 (Docket No. 1).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

**REPORT AND RECOMMENDATION - 3**

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.  The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  REPORT

**A.    Sequential Processes**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

**REPORT AND RECOMMENDATION - 4**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since January 1, 2002, the alleged onset date (AR 17).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: (1) foot neuropathy, (2) asthma, and (3) obesity. (AR 18-19).

**REPORT AND RECOMMENDATION - 5**

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id.*  Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  (AR 19).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the residual functional capacity to perform sedentary work, with the following limitations: (1) she can perform frequent reaching, handling, feeling, pushing, and pulling with her right hand; (2) she can perform frequent handling and feeling with her left hand, but only occasional reaching, pushing, or pulling; (3) she can frequently use her feet for foot control operations; (4) she can occasionally climb, balance, stoop, kneel, crouch, or crawl; (5) she can occasionally be exposed

**REPORT AND RECOMMENDATION - 6**

to unprotected heights, moving mechanical parts, concentrated dusts, odors, fumes, and extreme heat or cold; (6) she can walk one block at a reasonable pace; (7) she can stand and/or walk for five hours in an eight-hour day with normal breaks; (8) she can perform occasional fine fingering and feeling with both hands; and (9) she should avoid all fast-paced production-rate work. (AR 19-22).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that, through the date last insured, Petitioner was unable to perform any past relevant work. (AR 23). However, considering Petitioner's age, education, work experience, and residual functional capacity, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" – for example, telephone quotation clerk and accounting clerk (AR 23-24).

**B.     Analysis**

Petitioner's argument is straightforward, contending that the physical demands associated with a telephone quotation clerk and an accounting clerk do not align with the ALJ's findings vis à vis her residual functional capacity  – said another way, the limitations determined by the ALJ (and, of course, claimed by Petitioner) necessarily prevent her from performing either job. *See*

**REPORT AND RECOMMENDATION - 7**

Pet.'s Brief, pp. 3-6 (Docket No. 16).  The undersigned disagrees that the record supports such a conclusion.

Relevant to the instant action, the ALJ determined that Petitioner could (1) perform frequent reaching, handling, feeling, pushing, and pulling with her right hand; (2) perform frequent handling and feeling with her left hand, but only occasional reaching, pushing, or pulling with her left hand; and (3) perform occasional fine fingering and feeling with both hands. (AR 19-22).  Petitioner does not dispute these findings.  Rather, Petitioner argues that such limitations were never accurately and fully presented to the vocational expert which, in turn, rendered the vocational expert's opinion as to those occupations available to Petitioner meaningless.  *See* Pet.'s Brief, pp. 4-5 (Docket No. 16) ("The vocational expert was never asked about the limited use of the left arm.").

At the hearing, the ALJ posed a hypothetical to the vocational expert, asking about the availability of light work, but  assuming (among other things) that Petitioner could frequently reach, handle, feel, push, and pull with her right hand; occasionally reach, push, and pull with her left hand; and frequently handle, finger, or feel with her left hand.  (AR 637).  The ALJ continued to supplement that hypothetical, adding later that, instead of frequently handling, fingering, or feeling with her left hand (*see supra*), Petitioner now could only "[o]ccasionally fine finger and feel with both hands."  (AR 639-40).[2]  Following questions from Petitioner's counsel, the ALJ then asked the vocational expert whether any sedentary jobs existed with the

---

[2] It is apparent from the record that the ALJ was unclear as to the original limitation dealing with fingering and feeling.  *See* (AR 640) ("I guess that's an enlargement on hypothetical one which allowed partial of that one hand or the other, I don't remember which.  Anyway, occasional fine fingering, occasional feeling with, with her hands.").  Any confusion is immaterial when understanding that the ALJ ultimately incorporated such a limitation to both hands when assessing Petitioner's residual functional capacity.

**REPORT AND RECOMMENDATION - 8**

same limitations previously identified.  (AR 643).  In response, the vocational expert noted that telephone quotation clerks and charge account clerks represented such jobs.  *Id*.  Therefore, the ALJ adequately (even if arguably in a somewhat convoluted manner) set the stage for the vocational expert to consider whether sedentary jobs existed in significant numbers in the national economy with respect to someone who, along with other undisputed limitations, could (1) frequently reach, handle, feel, push, and pull with her right hand; (2) occasionally reach, push, and pull with her left hand; and (3) occasionally fine finger and feel with both hands.  With that backdrop in mind, according to the vocational expert, such sedentary jobs included telephone quotation clerks and charge account clerks.

Satisfied that the vocational expert was indeed asked about limitations associated with Petitioner's left hand, the Court next turns to whether the job duties of a charge account clerk[3] can actually be performed by someone with the listed limitations – namely, whether someone who can only occasionally reach push and pull with her left hand can work as a charge account clerk.

According to the Dictionary of Occupational Titles ("DOT"), the duties of a charge account clerk (alternate titles include a credit-card reviewer or a new-account interviewer) include:

---

[3]  Recognizing that the ALJ found Petitioner able to perform occasional fine fingering and feeling with both hands and that a telephone quotation clerk requires frequent fingering, Respondent concedes that Petitioner could not perform the occupation of telephone quotation clerk.  *See* Resp't's Brief, pp. 6-7 (Docket No. 17) (citing DOT 237.367-046, 1991 WL 672194). Unlike a telephone quotation clerk, a charge account clerk requires only occasional fingering. *See* DOT 205.367-014, 1991 WL 671715.  As to a charge account clerk, Petitioner mistakenly refers to an accounting clerk, citing to DOT 216.482.010, 1991 WL 671933.  Although inapplicable here, like a telephone quotation clerk, the work of an accounting clerk requires frequent fingering.  *See id*.

**REPORT AND RECOMMENDATION - 9**

> Interviews customers applying for charge accounts: Confers with customer to explain type of charge plans available. Assists customer in filling out application or completes application for customer. Reviews applications received by mail. Files credit applications after credit department approves or disapproves credit. May check references by phone or form letter and notify customer of acceptance or rejection of credit. May verify entries and correct errors on charge accounts, using adding machine. May answer credit rating requests from banks and credit bureaus. May issue temporary shopping slip when credit references appear satisfactory.

*See* DOT 205.367-014, 1991 WL 671715. Moreover, it is understood that a charge account clerk frequently "reaches" while performing such tasks. *See id*. Petitioner implies that, because she can only occasionally reach with her left hand (although still being able to frequently reach with her dominant right hand), "the occasional use limitation with the left arm would significantly erode the number of identified jobs," thus necessitating a remand "for further development as to what effect the occasional use limitation of the arm in reaching would have on Petitioner's ability to perform the identified jobs." *See* Pet.'s Brief, p. 5 (Docket No. 16).

Petitioner offers no support for her argument, particularly when understanding that the vocational expert *was* aware of the differing limitations between Petitioner's left and right hands when opining on the availability of certain sedentary jobs. *See supra*. Additionally, Petitioner's counsel offered up no follow-up questions to the vocational expert. (AR 644). In the Court's mind, while a charge account clerk may need to frequently reach to perform her duties (*see supra*), there is nothing in its job description that necessitates the frequent reaching of both hands, especially when considering that Petitioner is able to frequently reach with her dominant right hand, coupled with occasional reaching with her left hand. *See, e.g.*, (AR 641) (vocational expert explaining to Petitioner's counsel the interplay between hypothetical claimant's limitations between dominant and non-dominant hands when performing tasks); *see also, e.g.*, *Banks v. Astrue*, 537 F. Supp. 2d 75, 80-82 (D.D.C. 2008) (vocational expert's testimony that

**REPORT AND RECOMMENDATION - 10**

claimant had to avoid above-shoulder lifting with her right shoulder and frequent, repetitive reaching with her right upper extremity did not conflict with Dictionary of Occupational Titles' descriptions of jobs as addresser, final assembler, and call-out operator, even though reaching and general lifting were physical demands for positions).

These findings combine to align with the ALJ's view that Petitioner's listed limitations do not significantly affect her ability to perform certain sedentary-level positions.  Therefore, there is sufficient evidence in the record to support the findings of the ALJ that Petitioner was not disabled and, instead, could perform work that exists in sufficient numbers in the national economy.  In reaching such a conclusion in this appeal process, the Court is mindful that the subjectively-viewed landscape of available employment to someone in Petitioner's circumstances may seem completely at odds with the Petitioner's experience.  However, a finding of disability under the Social Security Act is necessarily a compartmentalized and stringent process, and so long as the fact-finding and analysis of the agency and its administrative law judges are supportable under the law, those decisions are entitled to deference.  That is the case here, and the Court will not disturb the ALJ's rulings on this record.

## IV.  RECOMMENDATION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

The evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different

**REPORT AND RECOMMENDATION - 11**

interpretation. Accordingly, the ALJ's decision as to Petitioner's alleged disability is based on proper legal standards and supported by substantial evidence. Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the ALJ's decision as to Petitioner's residual functional capacity and corresponding ability to perform certain sedentary work is based on proper legal standards and supported by substantial evidence. Therefore, it is HEREBY RECOMMENDED that the decision of the Commissioner be AFFIRMED and that this action be DISMISSED in its entirety, with prejudice.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days. . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not to exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED: **August 13, 2012**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**REPORT AND RECOMMENDATION - 12**